**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

| | |
|---|---|
| Barbara Armstrong, | Civil Action No. 3:23-CV-840 |
| Plaintiff, | **NOTICE OF REMOVAL** |
| v. | |
| Western Southern Financial Group, Inc., | |
| Defendant. | |

Exhibit A

# STATE OF NORTH CAROLINA

_____ GASTON _____ County

File No. 23 CVS 2093

In The General Court of Justice
☐ District  ☒ Superior Court Division

| | |
|---|---|
| Name Of Plaintiff<br>BARBARA ARMSTRONG | |
| Address<br>c/o Plaintiff's Counsel: 390 Interlocken Crescent, Suite 350 | **CIVIL SUMMONS**<br>☐ **ALIAS AND PLURIES SUMMONS (ASSESS FEE)** |
| City, State, Zip<br>Broomfield          CO          80021 | |
| **VERSUS** | G.S. 1A-1, Rules 3 and 4 |
| Name Of Defendant(s)<br>WESTERN & SOUTHERN FINANCIAL GROUP, INC. | Date Original Summons Issued |
| | Date(s) Subsequent Summons(es) Issued |

**To Each Of The Defendant(s) Named Below:**

| Name And Address Of Defendant 1<br>WESTERN & SOUTHERN FINANCIAL GROUP, INC.<br>c/o: Donald J. Wuebbling<br>400 Broadway<br>Cincinnati          OH          45202 | Name And Address Of Defendant 2 |
|---|---|

**IMPORTANT!** You have been sued! These papers are legal documents, DO NOT throw these papers out!
You have to respond within 30 days. You may want to talk with a lawyer about your case as soon as
possible, and, if needed, speak with someone who reads English and can translate these papers!

**¡IMPORTANTE!** ¡Se ha entablado un proceso civil en su contra! Estos papeles son documentos legales.
¡NO TIRE estos papeles!
Tiene que contestar a más tardar en 30 días. ¡Puede querer consultar con un abogado lo antes posible
acerca de su caso y, de ser necesario, hablar con alguien que lea inglés y que pueda traducir estos
documentos!

**A Civil Action Has Been Commenced Against You!**

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been
   served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| Name And Address Of Plaintiff's Attorney (if none, Address Of Plaintiff)<br>Megan Frysinger<br>Chelsea Bauer<br>390 Interlocken Crescent, Suite 350<br>Broomfield          CO          80021 | Date Issued<br>10-07-23 | Time<br>2:55  ☐ AM  ☒ PM |
|---|---|---|
| | Signature | |
| | ☒ Deputy CSC  ☐ Assistant CSC  ☐ Clerk Of Superior Court | |

| ☐ **ENDORSEMENT (ASSESS FEE)**<br>This Summons was originally issued on the date indicated<br>above and returned not served. At the request of the plaintiff,<br>the time within which this Summons must be served is<br>extended sixty (60) days. | Date Of Endorsement | Time<br>☐ AM  ☐ PM |
|---|---|---|
| | Signature | |
| | ☐ Deputy CSC  ☐ Assistant CSC  ☐ Clerk Of Superior Court | |

**NOTE TO PARTIES:** _Many counties have **MANDATORY ARBITRATION** programs in which most cases where the amount in controversy is $25,000 or
less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if
so, what procedure is to be followed._

(Over)

AOC-CV-100, Rev. 4/18
© 2018 Administrative Office of the Courts

| RETURN OF SERVICE |
|---|

I certify that this Summons and a copy of the complaint were received and served as follows:

## DEFENDANT 1

| Date Served | Time Served | | | Name Of Defendant |
|---|---|---|---|---|
| | | ☐ AM | ☐ PM | WESTERN & SOUTHERN FINANCIAL GROUP, INC. |

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

*Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)*

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason:

## DEFENDANT 2

| Date Served | Time Served | | | Name Of Defendant |
|---|---|---|---|---|
| | | ☐ AM | ☐ PM | |

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

*Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)*

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason:

| Service Fee Paid | Signature Of Deputy Sheriff Making Return |
|---|---|
| $ | |
| Date Received | Name Of Sheriff (type or print) |
| | |
| Date Of Return | County Of Sheriff |
| | |

AOC-CV-100, Side Two, Rev. 4/18
© 2018 Administrative Office of the Courts

# STATE OF NORTH CAROLINA

| | File No. | |
|---|---|---|
| | | 23 CVS 3683 |

GASTON _____ County

FILED

In The General Court Of Justice
☐ District  ☒ Superior Court Division

| Name And Address Of Plaintiff 1 | |
|---|---|
| BARBARA ARMSTRONG | |
| c/o Plaintiff's Counsel | **GENERAL** |
| 390 Interlocken Crescent, Suite 350 | 2023 OCT 27 P 2: 54 |
| Broomfield          CO      80021 | **CIVIL ACTION COVER SHEET** |
| | GASTON COUNTY, C.S.C. |

| Name And Address Of Plaintiff 2 | ☒ INITIAL FILING  ☐ SUBSEQUENT FILING |
|---|---|

BY_____

Rule 5(b) of the General Rules of Practice for the Superior and District Courts

## VERSUS

Name And Address Of Attorney Or Party, If Not Represented
(complete for initial appearance or change of address)

| Name And Address Of Defendant 1 | |
|---|---|
| WESTERN & SOUTHERN FINANCIAL GROUP, INC. | Megan Frysinger |
| 400 Broadway | 390 Interlocken Crescent, Suite 350 |
| Cincinnati, Ohio 45202 | Broomfield, CO 80021 |

| Telephone No. | Cellular Telephone No. |
|---|---|
| 720-466-3505 | |

| Summons Submitted | | NC Attorney Bar No. | Attorney Email Address |
|---|---|---|---|
| ☒ Yes  ☐ No | | 54499 | megan.frysinger@hlbslaw.com |

| Name And Address Of Defendant 2 | ☒ Initial Appearance in Case  ☐ Change of Address |
|---|---|

| | Name Of Firm | Fax No. |
|---|---|---|
| | HLBS Law | 720-340-5022 |

| Summons Submitted | Counsel For |
|---|---|
| ☐ Yes  ☐ No | ☒ All Plaintiffs  ☐ All Defendants  ☐ Only: (list party(ies) represented) |

☒ Jury Demanded In Pleading    ☐ Complex Litigation    ☐ Stipulate to Arbitration

## TYPE OF PLEADING

(check all that apply)

☐ Amend (AMND)
☐ Amended Answer/Reply (AMND-Response)
☐ Amended Complaint (AMND)
☐ Assess Costs (COST)
☐ Answer/Reply (ANSW-Response) (see Note)
☐ Change Venue (CHVN)
☒ Complaint (COMP)
☐ Confession Of Judgment (CNFJ)
☐ Consent Order (CONS)
☐ Consolidate (CNSL)
☐ Contempt (CNTP)
☐ Continue (CNTN)
☐ Compel (CMPL)
☐ Counterclaim (CTCL) Assess Court Costs
☐ Crossclaim (list on back) (CRSS) Assess Court Costs
☐ Dismiss (DISM) Assess Court Costs
☐ Exempt/Waive Mediation (EXMD)
☐ Extend Statute Of Limitations, Rule 9 (ESOL)
☐ Extend Time For Complaint (EXCO)
☐ Failure To Join Necessary Party (FJNP)

☐ Failure To State A Claim (FASC)
☐ Implementation Of Wage Withholding In Non-IV-D Cases (OTHR)
☐ Improper Venue/Division (IMVN)
☐ Including Attorney's Fees (ATTY)
☐ Intervene (INTR)
☐ Interplead (OTHR)
☐ Lack Of Jurisdiction (Person) (LJPN)
☐ Lack Of Jurisdiction (Subject Matter) (LJSM)
☐ Modification Of Child Support In IV-D Actions (MSUP)
☐ Notice Of Dismissal With Or Without Prejudice (VOLD)
☐ Petition To Sue As Indigent (OTHR)
☐ Rule 12 Motion In Lieu Of Answer (MDLA)
☐ Sanctions (SANC)
☐ Set Aside (OTHR)
☐ Show Cause (SHOW)
☐ Transfer (TRFR)
☐ Third Party Complaint (list Third Party Defendants on back) (TPCL)
☐ Vacate/Modify Judgment (VCMD)
☐ Withdraw As Counsel (WDCN)
☐ Other (specify and list each separately)

NOTE: All filings in civil actions shall include as the first page of the filing a cover sheet summarizing the critical elements of the filing in a format prescribed by the Administrative Office of the Courts, and the Clerk of Superior Court shall require a party to refile a filing which does not include the required cover sheet. For subsequent filings in civil actions, the filing party must include either a General Civil (AOC-CV-751), Motion (AOC-CV-752), or Court Action (AOC-CV-753) cover sheet.

(Over)

|  | CLAIMS FOR RELIEF |  |
|---|---|---|

☐ Administrative Appeal (ADMA)
☐ Appointment Of Receiver (APRC)
☐ Attachment/Garnishment (ATTC)
☐ Claim And Delivery (CLMD)
☐ Collection On Account (ACCT)
☐ Condemnation (CNDM)
☐ Contract (CNTR)
☐ Discovery Scheduling Order (DSCH)
☐ Injunction (INJU)

☐ Limited Driving Privilege - Out-Of-State
   Convictions (PLDP)
☐ Medical Malpractice (MDML)
☐ Minor Settlement (MSTL)
☐ Money Owed (MNYO)
☐ Negligence - Motor Vehicle (MVNG)
☒ Negligence - Other (NEGO)
☐ Motor Vehicle Lien G.S. Chapter 44A (MVLN)
☐ Possession Of Personal Property (POPP)

☐ Product Liability (PROD)
☐ Real Property (RLPR)
☐ Specific Performance (SPPR)
☒ Other *(specify and list each separately)*
   Wrongful termination
   Defamation
   Intentional Infliction of Emotional
   Distress
   Unjust Enrichment
   Damages

| Date | Signature Of Attorney/Party |
|---|---|
| 10/27/2023 | *Megan Fraysingur* |

**FEES IN G.S. 7A-308 APPLY**
Assert Right Of Access (ARAS)
Substitution Of Trustee (Judicial Foreclosure) (RSOT)
Supplemental Procedures (SUPR)

**PRO HAC VICE FEES APPLY**
Motion For Out-Of-State Attorney To Appear In NC Courts In A Civil Or Criminal Matter (Out-Of-State Attorney/Pro Hac Vice Fee)

| No. | ☐ Additional Plaintiff(s) |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

| No. | ☐ Additional Defendant(s)    ☐ Third Party Defendant(s) | Summons Submitted |
|---|---|---|
|  |  | ☐ Yes   ☐ |
|  |  | ☐ Yes   ☐ |
|  |  | ☐ Yes   ☐ |
|  |  | ☐ Yes   ☐ |
|  |  | ☐ Yes   ☐ |

*Plaintiff(s) Against Whom Counterclaim Asserted*

*Defendant(s) Against Whom Crossclaim Asserted*

# STATE OF NORTH CAROLINA

File No.

23 CVS 3683

GASTON _____ County

In The General Court Of Justice

| | |
|---|---|
| Name And Address Of Plaintiff<br>BARBARA ARMSTRONG<br>c/o Plaintiff's Counsel: 390 Interlocken Crescent, Suite 350<br>Broomfield, CO 80021 | **~~FILED~~** |

**FILED**

2023 OCT 27 P 2 54

GASTON COUNTY, C.S.C.

**SERVICEMEMBERS CIVIL RELIEF ACT DECLARATION**

**VERSUS**

Name And Address Of Defendant
WESTERN & SOUTHERN FINANCIAL GROUP, INC.
400 Broadway
Cincinnati, OH 45202

BY _____

G.S. Ch. 127B, Art. 4; 50 U.S.C. 3901 to 4043

**NOTE:** *Though this form may be used in a Chapter 45 Foreclosure action, it is not a substitute for the certification that may be required by G.S. 45-21.12A.*

## DECLARATION

I, the undersigned Declarant, under penalty of perjury declare the following to be true:

1. As of the current date: *(check one of the following)*
   - ☐ a. I have personal knowledge that the defendant named above is in military service.*
   - ☒ b. I have personal knowledge that the defendant named above is **not** in military service.*
   - ☐ c. I am unable to determine whether the defendant named above is in military service.*

2. As of the current date, I ☐ have ☒ have not received a copy of a military order from the defendant named above relating to State active duty as a member of the North Carolina National Guard or service similar to State active duty as a member of the National Guard of another state. *See G.S. 127B-27 and G.S. 127B-28(b).*

3. I ☐ used ☒ did not use the Servicemembers Civil Relief Act Website (https://scra.dmdc.osd.mil/) to determine the defendant's federal military service.
   - ☐ The results from my use of that website are attached.
   - **(NOTE:** *The Servicemembers Civil Relief Act Website is a website maintained by the Department of Defense (DoD). If DoD security certificates are not installed on your computer, you may experience security alerts from your internet browser when you attempt to access the website. Members of the North Carolina National Guard under an order of the Governor of this State and members of the National Guard of another state under an order of the governor of that state will **not** appear in the SCRA Website database.)*

4. The following facts support my statement as to the defendant's military service: *(State how you know the defendant is or is not in the military. Be specific.)*
   Defendant is a corporation organized in the state of Ohio.

**\*NOTE:** *The term "military service" includes the following: active duty service as a member of the United States Army, Navy, Air Force, Marine Corps, or Coast Guard; service as a member of the National Guard under a call to active service authorized by the President or the Secretary of Defense for a period of more than 30 consecutive **days** for purposes of responding to a national emergency; active service as a commissioned officer of the Public Health Service or of the National Oceanic and Atmospheric Administration; any period of service during which a servicemember is absent from duty on account of sickness, wounds, leave, or other lawful cause. 50 U.S.C. 3911(2). The term "military service" also includes the following: State active duty as a member of the North Carolina National Guard under an order of the Governor pursuant to Chapter 127A of the General Statutes, for a period of more than 30 consecutive days; service as a member of the National Guard of another state who resides in North Carolina and is under an order of the governor of that state that is similar to State active duty, for a period of more than 30 consecutive days. G.S. 127B-27(3) and G.S. 127B-27(4).*

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct.

| Date<br>10/27/2023 | Signature Of Declarant<br>*Megan Frysinger* | Name Of Declarant (type or print)<br>Megan Frysinger |
|---|---|---|

**NOTE TO COURT:** *Do not proceed to enter judgment in a non-criminal case in which the defendant has not made an appearance until a Servicemembers Civil Relief Act affidavit or declaration (whether on this form or not) has been filed, and if it appears that the defendant is in military service, do not proceed to enter judgment until such time that you have appointed an attorney to represent him or her.*

*(Over)*

AOC-G-250, Rev. 5/21
© 2021 Administrative Office of the Courts

# Information About Servicemembers Civil Relief Act Affidavits And Declarations

## 1. Plaintiff to file affidavit/declaration

In any civil action or proceeding, including any child custody proceeding, in which the defendant does not make an appearance, the court, before entering judgment for the plaintiff, shall require the plaintiff to file with the court an affidavit—

(A) stating whether or not the defendant is in military service and showing necessary facts to support the affidavit; or

(B) if the plaintiff is unable to determine whether or not the defendant is in military service, stating that the plaintiff is unable to determine whether or not the defendant is in military service.

50 U.S.C. 3931(b)(1).

## 2. Appointment of attorney to represent defendant in military service

If in a civil action or proceeding in which the defendant does not make an appearance it appears that the defendant is in military service, the court may not enter a judgment until after the court appoints an attorney to represent the defendant. If an attorney appointed to represent a service member cannot locate the service member, actions by the attorney in the case shall not waive any defense of the service member or otherwise bind the service member. 50 U.S.C. 3931(b)(2). State funds are not available to pay attorneys appointed pursuant to the Servicemembers Civil Relief Act. To comply with the federal Violence Against Women Act and in consideration of G.S. 50B-2(a), 50C-2(b), and 50D-2(b), plaintiffs in Chapter 50B, Chapter 50C, and Chapter 50D proceedings should not be required to pay the costs of attorneys appointed pursuant to the Servicemembers Civil Relief Act. Plaintiffs in other types of actions and proceedings may be required to pay the costs of attorneys appointed pursuant to the Servicemembers Civil Relief Act. The allowance or disallowance of the ordering of costs will require a case-specific analysis.

## 3. Defendant's military status not ascertained by affidavit/declaration

If based upon the affidavits filed in such an action, the court is unable to determine whether the defendant is in military service, the court, before entering judgment, may require the plaintiff to file a bond in an amount approved by the court. If the defendant is later found to be in military service, the bond shall be available to indemnify the defendant against any loss or damage the defendant may suffer by reason of any judgment for the plaintiff against the defendant, should the judgment be set aside in whole or in part. The bond shall remain in effect until expiration of the time for appeal and setting aside of a judgment under applicable Federal or State law or regulation or under any applicable ordinance of a political subdivision of a State. The court may issue such orders or enter such judgments as the court determines necessary to protect the rights of the defendant under this Act. 50 U.S.C. 3931(b)(3).

## 4. Satisfaction of requirement for affidavit/declaration

The requirement for an affidavit above may be satisfied by a statement, declaration, verification, or certificate, in writing, subscribed and certified or declared to be true under penalty of perjury. 50 U.S.C. 3931(b)(4). The presiding judicial official will determine whether the submitted affidavit is sufficient.

## 5. Penalty for making or using false affidavit/declaration

A person who makes or uses an affidavit permitted under 50 U.S.C. 3931(b) (or a statement, declaration, verification, or certificate as authorized under 50 U.S.C. 3931(b)(4)) knowing it to be false, shall be fined as provided in title 18, United States Code, or imprisoned for not more than one year, or both. 50 U.S.C. 3931(c).

NORTH CAROLINA

GASTON COUNTY

FILED
2023 OCT 27 P 2: 54

GASTON COUNTY. C.S.C.

BY _____

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
23 CVS 3623

BARBARA ARMSTRONG                )
                                 )
        *Plaintiff*,             )
                                 )
v.                               )          **COMPLAINT**
                                 )
WESTERN & SOUTHERN FINANCIAL     )
GROUP, INC.                      )
                                 )
        *Defendant*.             )

NOW COMES Plaintiff Barbara Armstrong ("Ms. Armstrong"), by and through counsel, and hereby files this Complaint against Defendant Western & Southern Financial Group, Inc. ("Western & Southern") and in support states as follows:

**PARTIES**

1.      Ms. Armstrong is a life insurance agent and is a citizen and resident of Gastonia, North Carolina.

2.      Western & Southern is a corporation organized under the laws of Ohio with its principal place of business in Cincinnati, Ohio.

**JURISDICTION & VENUE**

3.      This Court has subject matter jurisdiction over Western & Southern pursuant to N.C.G.S. § 7A-240 as a court of original general jurisdiction of all justiciable matters of a civil nature.

4.      This Court has personal jurisdiction over Western & Southern pursuant to N.C.G.S. § 1-75.4(1)(d) due to its substantial activities within this state, including ten office locations within

1

the state of North Carolina and its sales of insurance products to the citizens of the state of North Carolina. Western & Southern also employed Ms. Armstrong in the State of North Carolina, and all relevant evidence and witnesses are located in the State of North Carolina.

    5.      Venue is proper in Gaston County pursuant to N.C.G.S. § 1-82 as the county in which Ms. Armstrong resides at the commencement of this action, the county in which Ms. Armstrong was employed by Western & Southern, and the county in which all relevant evidence and witnesses are located.

## STATEMENT OF FACTS

6.      Ms. Armstrong has worked in the insurance industry for over thirty (30) years.

7.      On or about November 15, 2004, Ms. Armstrong began her employment with Western & Southern as an insurance sales representative.

8.      As a part of her employment, Ms. Armstrong was enrolled in the company's Long Term Incentive and Retention Plan ("LTIRP").

9.      In early 2022, Ms. Armstrong informed Western & Southern that she intended to retire from the company.

10.    Upon retirement, Ms. Armstrong would have been entitled to over $1 million under the LTIRP.

11.    However, on February 17, 2022, after eighteen (18) years of dutiful employment, Ms. Armstrong was suddenly and unexpectantly suspended by Western & Southern, and she was told that Western & Southern was launching an investigation into her sales practices.

12.    Despite asking numerous times, Ms. Armstrong was never given a specific reason for her suspension or for the investigation.

2

13.    On April 28, 2022, Western & Southern sent a letter to Ms. Armstrong notifying her that she was being terminated for cause from Western & Southern ("Termination Letter") for alleged violations of "multiple Company policies, including the Western & Southern Financial Group Code of Conduct and Business Ethics, the Western & Southern Life Sales Practices policy, and the terms of [her] Sales Representative's Agreement."

14.    The Termination Letter failed to provide details as to what Ms. Armstrong did that violated Western & Southern's policies or documents to support her termination, and therefore, why she deserved termination.

15.    Again, despite asking numerous times, Ms. Armstrong was not given a specific reason for her termination.

16.    Ms. Armstrong worked for Western & Southern for eighteen (18) years without a single disciplinary notice or action and never engaged in any wrongdoing during her entire career.

17.    Ms. Armstrong was seventy-three (73) years old at the time of her termination.

18.    On May 25, 2022, after her termination, Ms. Armstrong wrote to Western & Southern requesting information on the specific grounds of the cause of her termination.

19.    Western & Southern accused Ms. Armstrong of initiating policies with numerous people who were purportedly incarcerated at the time. Western & Southern only shared the names of two of these alleged incarcerated customers with Ms. Armstrong at the time. One of them was Christopher Martin, who has sworn that he never spoke with anyone at Western & Southern about life insurance. See, Exhibit 1. To Ms. Armstrong's shock, the other of those names was that of her son. However, Ms. Armstrong's son had never been incarcerated; in fact, he worked at a prison camp. When Ms. Armstrong shared that information with Western & Southern, they refused to give her additional names.

3

20. Ms. Armstrong knew she had always followed Western & Southern's policies regarding client communications, procuring client information, and selling insurance policies to customers.

21. Ms. Armstrong always asked applicants the required questions, which included if the applicant was on parole, convicted, or in jail.

22. Each of the applicants responded that they were not on parole, convicted, or in jail, at which point it was the responsibility of Western & Southern's underwriting team to conduct background checks and perform additional due diligence on the applicants.

23. Upon her termination, Ms. Armstrong promptly hired legal counsel to seek the pay-out of her benefits under the LTIRP. Western & Southern denied the request.

24. On May 17, 2022, Ms. Armstrong received a notice from the North Carolina Department of Insurance (the "NC DOI") that the NC DOI had "received information from [Western & Southern] that [she was] terminated for cause ... for using fraudulent, coercive, or dishonest practices, or demonstrating incompetence, untrustworthiness, or financial irresponsibility in the conduct of business in this state or elsewhere." Ms. Armstrong was instructed to provide a written response to the letter to be considered in the course of the NC DOI's investigation.

25. As of the receipt of that letter, Ms. Armstrong was still unaware of the "fraudulent, coercive, or dishonest practices" that Western & Southern had alleged. Ms. Armstrong promptly hired legal counsel to respond to the NC DOI in its investigation.

26. On May 31, 2022, Ms. Armstrong received a notice from the South Carolina Department of Insurance (the "SC DOI") that the SC DOI had "received information from [Western & Southern] that [she was] terminated for cause for forging a name to an application."

4

Mr. Armstrong was instructed to provide a written response to the letter to be considered in the course of the SC DOI's investigation.

27. Ms. Armstrong never forged a customer's name to any application during her employment at Western & Southern or at any other point in her career, and she was not informed of which customer's name Western & Southern believed to be forged. Ms. Armstrong promptly hired legal counsel to respond to the SC DOI in its investigation.

28. Ms. Armstrong and her counsel, at all times, cooperated fully in the investigations of the NC DOI and the SC DOI.

29. Ms. Armstrong later learned, in the course of those investigations, that Western & Southern had accused her of additional wrongdoing in their representations to the NC DOI and SC DOI, including (a) disguising her voice and pretending to be clients on twenty-one (21) phone calls, (b) mispresenting criminal histories of applicants, (c) having incarcerated individuals apply for insurance products, and (d) forging a name on an application.

30. Ms. Armstrong was still not informed of any specific instances or names, and she was, therefore, unable to refute the claims or defend herself against Western & Southern. Ms. Armstrong was left with no option but to wait until the conclusion of the state investigations.

31. On March 29, 2023, Ms. Armstrong and her counsel appeared by order in front of the NC DOI to respond to the allegations in person.

32. After a thorough investigation by the NC DOI, Ms. Armstrong was informed at the conference that the allegations by Western & Southern were found to be false, unfounded, and/or fabricated.

33. Upon information and belief, the NC DOI investigator engaged in communications with all of the customers (or purported customers, in some instances) named by Western &

5

Southern as being the subject of Ms. Armstrong's allegedly violative conduct, in addition to conducting research with the NC Attorney General's office and reviewing the evidence provided by Ms. Armstrong, and the investigator did not find any truth to the allegations of wrongdoing by Ms. Armstrong.

34.     Upon information and belief, the NC DOI investigator found that, of the customers Western & Southern alleged were incarcerated at the time of policy initiation, none of those customers were actually incarcerated.

35.     On March 30, 2023, the NC DOI sent written notice to Ms. Armstrong that the NC DOI would not be taking any action against her and was closing its file. See, Exhibit 2.

36.     On April 24, 2023, after a thorough investigation, the SC DOI also sent written notice to Ms. Armstrong that "no determination of violation has been made" and that no action would be taken by the SC DOI. See, Exhibit 3.

37.     Upon information and belief, Western & Southern has a pattern of terminating older employees "for cause" to prevent paying the large lump sums that would have been due under the LTIRP if the individual retired.

38.     Due to the wrongful termination of Western & Southern, Ms. Armstrong has incurred significant monetary damages, including, but not limited to: (a) the value of the LTIRP units owned by Ms. Armstrong as of the date of her termination; (b) the value of the LTIRP units she would have received had she been permitted to continue her work through retirement; (c) the loss of renewal income; (d) the loss of revenue due to the loss of appointments with insurance companies due to the allegations, including, but not limited to, Mutual of Omaha Insurance Company, Omaha Insurance Company, Omaha Supplement Insurance Company, United World

6

Life Insurance Company, and United of Omaha Life Insurance Company; and (e) substantial attorneys' fees and costs.

39.     Ms. Armstrong has also experienced significant emotional distress as a result of the termination and false allegations circulated against her.

## CAUSES OF ACTION

### Cause of Action One
### Wrongful Termination in Violation of Age Discrimination in Employment Act ("ADEA")

The Age Discrimination in Employment Act of 1967 (ADEA) protects employees forty (40) years of age and older from discrimination based on age in hiring, promotion, discharge, compensation, or terms, and conditions or privileges of employment.[1] It is unlawful for an employer to discharge an individual or to otherwise discriminate against such individual with respect to their "compensation, terms, conditions, or privileges of employment, because of such individual's age[.]" 29 U.S.C. § 623(a); *see Bannerman v. Burlington Indus., Inc.,* 7 F.Supp.2d 645, 647 (E.D.N.C. 1997). "The ADEA is remedial and humanitarian legislation and should be liberally interpreted to effectuate the congressional purpose of ending age discrimination in employment." *Dartt v. Shell Oil Co.,* 539 F.2d 1256, 1260 (10th Cir.1976); *see Evans v. American Nurses Ass'n,* 657 F.Supp 1277, 1278 (W.D. Mo. 1987); *see also Horne v. New England Patriots Football Club,* 489 F.Supp 465, 469 (D. Mass. 1980) ("The federal policy against [age] discrimination demands that the provisions of [the ADEA] be liberally construed."). "As for age discrimination, while the plaintiffs need not prove that age was the sole factor motivating the employer's decision, plaintiffs must still show evidence supporting the contention that age was a determining factor in the sense that they would not have been fired but for the defendants' motive to discriminate on the basis of

---

[1] U.S. Equal Employment Opportunity Commission. https://www.eeoc.gov/statutes/age-discrimination-employment-act-1967.

age." *Smith v. St. Regis Corp.*, 850 F.Supp. 1296, 1317 (S.D. Miss. 1994) (*citing Oxman v. WLS–TV*, 846 F.2d 448, 452 (7th Cir.1988)).

"The United States Supreme Court has established a scheme by which employees may prove discrimination in employment." *North Carolina Dep't of Crime Control and Pub. Safety v. Greene*, 616 S.E.2d 594 (N.C. Ct. App. 2005) (*citing McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). This scheme is a three-part test used for discrimination cases: (1) the plaintiff must establish a prima facie case of wrongful termination under the ADEA, (2) the defendant must prove a nondiscriminatory explanation for the termination, and (3) the plaintiff must show that the employer's reason for the action is a mere pretext for discrimination. Once the plaintiff satisfies their burden, the second step is that the defendant must prove a nondiscriminatory explanation. If the employer is able to provide a nondiscriminatory explanation, then the burden shifts back to the plaintiff to show "that the employer's reason for the action is a mere pretext for discrimination." *North Carolina Dep't of Crime Control and Pub. Safety*, at 600; *Ligon v. Triangle Pac. Corp.*, 935 F.Supp. 936, 939 (M.D.Tenn.1996). Through the admission of evidence, the defendant must clearly set forth reasons for its actions, which would support a finding that unlawful discrimination was not the cause of the employment action. *Ligon*, at 940.

First, to establish a prima facie case of wrongful termination under the ADEA, the plaintiff must show that: (1) she was a member of the protected class (i.e. over forty (40) years old); (2) she suffered an adverse employment decision; (3) at the time of the discharge, she was performing her job at a level that met her employer's legitimate expectations; and (4) following the discharge, she was replaced by someone with comparable qualifications significantly younger than she was. *Bannerman*, at 648; *see Ackerman v. Diamond Shamrock Corp.*, 670 F.2d 66, 69 (6th Cir. 1982). These elements are generally referred to as the *McDonnell Douglas* factors, after the 1973 Supreme

8

Court case *McDonnell Douglas Corp. v. Green. McDonnell Douglas* (411 U.S. 792 (1973)). However, the fourth factor has since been eliminated by the Supreme Court.[2] *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 312 (1996) ("The fact that one person in the protected class has lost out to another person in the protected class is thus irrelevant, so long as he has lost out because of his age."); *see Ligon*, at 941 ("The Supreme Court recently eliminated the fourth element from this analysis, at least for age discrimination cases.").

Ms. Armstrong has satisfied the elements of a prima facie case of wrongful termination under the ADEA. First, at the time of her termination, Ms. Armstrong was seventy-three (73) years of age, exceeding the forty-year-old age limitation. Ms. Armstrong has also suffered an adverse employment decision, as Western & Southern terminated Ms. Armstrong, satisfying the second *McDonnell Douglas* factor.

Third, at the time of her termination, Ms. Armstrong was performing her job at a level that met Western & Southern's legitimate expectations. Plaintiffs have adequately pleaded the third element of a prima facie case for discrimination under the ADEA by providing factual allegations of qualification, years of experience, lack of previous disciplinary action or issues, and unfounded (and, even, factually impossible) allegations of wrongdoing, along with disputing the factual bases of a defendant's termination decisions. *Ligon*, at 941. Western & Southern granted Ms. Armstrong the authority to represent it in the solicitation and procurement of applications, orders, and contracts for insurance products. At the time of her termination, Ms. Armstrong was performing

---

[2] Some courts have in the alternative, altered the fourth factor and instead examine if the "action occurred under circumstances giving rise to an inference of discrimination" and look to factors such as "invidious comments about people in the protected age class; more favorable treatment of younger employees; criticism of an employee's work performance in age-related degrading terms; a sequence of events leading to an employee's termination; or *the timing of the termination.*" *Miller v. National Ass'n of Sec. Dealers, Inc.*, 703 F.Supp.2d 230, 244-45 (E.D.N.Y. 2010) (*emphasis added*); *see Young v. Bank of Boston Conn.*, 1995 WL 908616, *3 (D. Conn. 1995).

her job by soliciting and procuring clients for Western & Southern's insurance products in accordance with all Western & Southern policies and procedures. Therefore, Ms. Armstrong has satisfied the third element to establish a prime facie case for wrongful termination in violation of the ADEA.

Additionally, the evidence shows that any nondiscriminatory explanation Western & Southern can provide for Ms. Armstrong's termination is pretextual. The proximity of a termination to the date when retirement benefits are scheduled to vest may constitute circumstantial evidence contributing to an inference of discrimination. *Miller v. National Ass'n of Sec. Dealers, Inc.*, 703 F.Supp.2d 230, 249 (E.D.N.Y. 2010). Ms. Armstrong was terminated because she was nearing retirement, which would have entitled her to a large payout from the LTIRP – a payout which Western & Southern was legally obligated to pay. However, by terminating Ms. Armstrong before she could retire, Ms. Armstrong's entitlement to the deferred compensation funds was nullified. Therefore, Western & Southern invented false accusations as a pretense to terminate Ms. Armstrong so that it would not have to pay her the large payout for which she was entitled due to her many dedicated years of work.

The NC DOI itself, after conducting a thorough investigation, found that the allegations by Western & Southern against Ms. Armstrong were false, unfounded, and/or fabricated and that Western & Southern made false and inconsistent allegations. The NC DOI ultimately made the decision to take no action against Ms. Armstrong. NC DOI never indicated that it found any wrongdoing on the part of Ms. Armstrong. Additionally, after conducting a thorough investigation, the South Carolina Department of Insurance ("SC DOI") also issued a letter informing Ms. Armstrong that "no determination of violation has been made" and that no action would be taken by the SC DOI. To be clear, two separate states conducted separate investigations into these

10

allegations over the course of almost a year and found no evidence of wrongdoing by Ms. Armstrong whatsoever,

The fact that Western & Southern provided a vague explanation for her termination, alleging violations of "multiple Company policies, including the Western & Southern Financial Group Code of Conduct and Business Ethics, the Western & Southern Life Sales Practices policy, and the terms of [her] Sales Representative's Agreement", as well as the fact that both the NC DOI and the SC DOI could find no evidence of any violation by Ms. Armstrong, demonstrates that Western & Southern's explanation for Ms. Armstrong's termination was pretextual so that it did not have to pay Ms. Armstrong the large payout for which she was entitled. Therefore, Ms. Armstrong has satisfied the third element of a prima facie case for discrimination under the ADEA.

## Cause of Action Two
### Wrongful Termination in Violation of Public Policy

"In North Carolina, the employer-employee relationship is governed by the at-will employment doctrine, which states that 'in the absence of a contractual agreement between an employer and an employee establishing a definite term of employment, the relationship is presumed to be terminable at the will of either party without regard to the quality of performance of either party.'" *Whiting v. Wolfson Casing Corp.*, 618 S.E.2d 750, 752 (N.C. Ct. App. 2005) (*quoting Kurtzman v. Applied Analytical Industries, Inc.*, 347 N.C. 329, 331, 493 S.E.2d 420, 422 (1997). However, North Carolina common law also recognizes several exceptions that prohibit employers from wrongfully terminating employers in an at-will employment relationship. *Coman v. Thomas Mfg. Co., Inc.*, 381 S.E.2d 445, 175 (N.C. 1989). Once such exception is if the termination would violate public policy. *Whiting*, at 752; *Deerman v. Beverly Cal. Corp.*, 518 S.E.2d 804, 806 (N.C. Ct. App. 1999); *Considine v. Compass Group USA, Inc.*, 551 S.E.2d 179, 181 (N.C. Ct. App. 2001).

11

"There is no specific list of what actions constitute a violation of public policy." *Ridenhour v. Int'l Bus. Mach. Corp.*, 512 S.E.2d 774, 778 (N.C. Ct. App. 1999). The North Carolina Supreme Court "has never held that an employee at will could be discharged in bad faith. To the contrary…this Court [has] recognized the principle that a master could not discharge his servant in bad faith." *Coman*, at 448. While the Supreme Court of North Carolina later stated that North Carolina does not recognize a "separate and distinct 'bad faith' exception to the employment-at-will doctrine[,]" it continued to say that the public policy exception created by the Supreme Court of North Carolina is "not just a remedial gap-filler. It is a judicially recognized outer limit to a judicially created doctrine, designed to vindicate the rights of employees fired for reasons offensive to the public policy of this State." *Amos v. Oakdale Knitting Co.*, 416 S.E.2d 166, 167, 171 (N.C. 1992).

The state of North Carolina has expressed its particular interest in the employment of older adults and protecting their rights. In fact, the State has specifically stated that it is the public policy of "this State to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgement on account of…age… by employers which regularly employ 15 or more employees" N.C.G.S. § 143-422.2; *Bannerman*, at 649 ("[T]he North Carolina courts recognize claims of wrongful termination based on violations of public policy"). "Our Supreme Court has directed that we look to federal decisions for guidance in establishing evidentiary standards and principles of law to be applied in discrimination cases." *Johnson v. Crossroads Ford, Inc.*, 749 S.E.2d 102, 108 (N.C. Ct. App. 2013) (*quoting Youse v. Duke Energy Corp.*, 171 N.C.App. 187, 193, 614 S.E.2d 396, 401 (2005)). "[T]he North Carolina Supreme Court has explicitly adopted the Title VII [of the Civil Rights Act of 1964] evidentiary standards in evaluating a state claim under § 143–422.2 insofar as they do not conflict with North

12

Carolina statutes and case law." *Johnson*, at 108 (*quoting Hughes v. Bedsole*, 48 F.3d 1376, 1383 (4th Cir.1995)).

Additionally, through its Aging and Adult Services department, the State has asserted that it works to "promote the independence and enhance the dignity of North Carolina's older adults ... through a community based system of opportunities, services, benefits and protections."[3] The State has also created a State Plan on Aging pursuant to N.C.G.S § 143B-181.1A and Section 307 of the federal Older Americans Act, in which it states that "North Carolina's aging and adult population will be free from abuse, neglect and exploitation, and have their rights protected." North Carolina Department of Health and Human Services, 2019-2023 State Plan on Aging, at 5-5 (the "State Plan") ("Adult maltreatment is a significant public health and human rights issue...Older adults who experience maltreatment have higher morbidity and mortality rates than those who do not. The likelihood of entering a nursing home or hospital increases dramatically with victimization.") The State's goals include making advancements in the areas of independence for older adults and individual safety and rights. State Plan, at 8. Employment of older adults is of particular interest to the State, as increasing employment among the older population will consequently mean that those older adults will have increased access to resources. State Plan, at 14. The State even has the Elder Rights Chief, a section responsible for statewide administration and supervision of programs under Title VII of the Older Americans Action, which includes providing information and in some circumstances assistance, with employment discrimination. State Plan, at 101.

North Carolina has specifically stated that it has a public policy to protect and safeguard the rights and opportunities of all persons to seek, obtain, and hold employment without discrimination based on age. North Carolina also has an implicit public policy to protect

---

[3]North Carolina Department of Health and Human Services, *Aging and Adult Services*, https://www.ncdhhs.gov/assistance/aging-and-adult-services (last visited August 28, 2023).

13

individuals' rights and opportunities to seek and keep employment regardless of age by promoting the independence of North Carolina's older adults. Mr. Armstrong was wrongfully terminated by Western & Southern in violation of North Carolina's public policy to protect the right and opportunity to seek and keep employment regardless of age.

## Cause of Action Three
### Defamation

"To be actionable, a defamatory statement must be false and must be communicated to a person or persons other than the person defamed." *Daniels v. Metro Magazine Holdings Co., L.L.C.*, 634 S.E.2d 586, 590 (N.C. Ct. App. 2006) (*quoting Andrews v. Elliot*, 426 S.E.2d 430, 432 (N.C. 1993); *see Clark v. Clark*, 867 S.E.2d 743, 754 (N.C. Ct. App. 2021). "In North Carolina, the term defamation applies to the two distinct torts of libel and slander." *Boyce & Isley, PLLC v. Cooper*, 568 S.E.2d 893, 898 (N.C. Ct. App. 2002). North Carolina recognizes three classes of libel: (1) libel per se (publications that are obviously defamatory), (2) publications susceptible of two interpretations one of which is defamatory and the other is not, and (3) libel per quod (publications that are not obviously defamatory, but when considered with innuendo, colloquium, and explanatory circumstances become libelous). *Renwick v. News and Observer Pub. Co.*, 312 S.E.2d 405, 408 (N.C. 1984). "Libel per se is a publication which, when considered alone without explanatory circumstances: (1) charges that a person has committed an infamous crime; (2) ... (3) tends to impeach a person in that person's trade or profession; or (4) otherwise tends to subject one to ridicule, contempt or disgrace." *Phillips v. Winston-Salem/Forsyth Cty. Bd. of Educ.*, 450 N.C. App. 274, 277 (N.C. Ct. App. 1994); *Nucor Corp. v. Prudential Equity Grp., LLC*, 659 S.E.2d 483, 486 (N.C. Ct. App. 2008); *Renwick*, at 409 (*citing Flake* at 60). "When an unauthorized publication is libelous per se, malice and damage are presumed from the fact of publication and no proof is required as to any resulting injury." *Renwick*, at 408 (*quoting Flake v. Greensboro News Co.*, 212

14

N.C. 780, 785, 195 S.E. 55, 59 (1938)). To be libelous per se, the defamatory words "must be susceptible of but one meaning and of such nature that the court can presume as a matter of law that they tend to disgrace and degrade the party or hold him up to public hatred, contempt, or ridicule, or cause him to be shunned and avoided." *Flake* at 60.

Western & Southern's statements regarding Ms. Armstrong to the NC DOI and SC DOI constitute libel per se. Western & Southern notified the NC DOI and SC DOI that Ms. Armstrong had been terminated for cause for "fraudulent, coercive, or dishonest practices, or demonstrating incompetence, untrustworthiness, or financial irresponsibility…" and provided purported evidence of numerous violations to the Departments, all of which was false, unfounded, and/or factually impossible. The knowingly false allegations made by Western & Southern were sent to the Departments of Insurance of two different states, and upon information and belief, to other insurance companies, including, but not limited to, Mutual of Omaha Insurance Company, Omaha Insurance Company, Omaha Supplement Insurance Company, United World Life Insurance Company, and United of Omaha Life Insurance Company.

The statements made by Western & Southern accused Ms. Armstrong of not only committing acts that violated the North Carolina General Statutes and the South Carolina Code of Laws, but also impeached her character and her long and successful career in insurance, by accusing her of fraudulent and dishonest practices, including (a) disguising her voice and pretending to be clients on twenty-one (21) phone calls, (b) mispresenting criminal histories of applicants, (c) having incarcerated individuals apply for insurance products, and (d) forging a name on an application. These false statements by Western & Southern subjected Ms. Armstrong to ridicule, contempt and disgrace as the statements were published to the regulators of her insurance business and led to investigations by the NC DOI and SC DOI that resulted in administrative action

15

and could have led to the loss of her insurance license. Due to Western & Southern's statements, Ms. Armstrong had to appear before the NC DOI to defend herself, her license, and her reputation from Western & Southern's accusations. Therefore, Western & Southern's statements to NC DOI and SC DOI satisfy Libel per se.

## Cause of Action Four
### Intentional Infliction of Emotional Distress

The elements of a claim for intentional infliction of emotion distress are (1) extreme and outrageous conduct by the defendant (2) which is intended to and does in fact cause (3) severe emotional distress. *Guthrie v. Conroy*, 567 S.E.2d 403, 408 (N.C. Ct. App. 2002) (*quoting Waddle v. Sparks*, 331 N.C. 73, 82, 414 S.E.2d 22, 27 (1992)); *Watson v. Dixon*, 502 S.E.2d 15, 19 (N.C. Ct. App. 1998); *Shreve v. Duke Power Co.*, 354 S.E.2d 357, 359 (N.C. Ct. App. 1987); *Hogan v. Forsyth Country Club Co.*, 340 S.E.2d 116, 119 (N.C. Ct. App. 1986). "The statute of limitations for intentional infliction of mental distress is three years." *Waddle v. Sparks*, 414 S.E.2d 22, 28 (N.C. 1992) (*citing Dickens v. Puryear*, 302 N.C. 437, 442, 276 S.E.2d 325, 330 (1981)). A defendant is liable for intentional infliction of emotion distress when it desires to inflict severe emotional distress or *"knows that such distress is certain, or substantially certain, to result from [its] conduct* or where [it] acts recklessly in deliberate disregard of a high degree of probability that the emotinal [sic] distress will follow and the mental distress does in fact result." *Norton v. Scotland Mem'l Hosp., Inc.*, 793 S.E.2d 703, 708 (N.C. Ct. App. 2016); *see Watson,* at 19 ("The tort may also exist where defendant's actions indicate a reckless indifference to the likelihood that they will cause severe emotional distress."); *see also Clark v. Clark,* 867 S.E.2d 704, 715-16 (N.C. Ct. App. 2021). The Restatement (Second) of Torts states that behavior that gives rise to liability for a claim of intentional infliction of emotion distress goes "beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *See*

16

*Briggs v. Rosenthal*, 327 S.E.2d 308, 311 (N.C. Ct. App. 1985) (*quoting* Restatement (Second) of Torts § 46, Comment d); *Clark*, at 715.

Western & Southern's actions surrounding its termination of Ms. Armstrong meet the elements of a claim for intentional infliction of emotion distress. In *Watson v. Dixon*, when determining if conduct was extreme and outrageous, the Court of Appeals of North Carolina looked to "all of the facts and attenuating circumstances, including the type of conduct engaged in and the length of time that the conduct continued." *Watson*, at 20.

First, Western & Southern engaged in behavior that was extreme and outrageous. After dedicating eighteen years to the company, Western & Southern terminated Ms. Armstrong before she was entitled to collect a large payout for which she was entitled by her written agreements with Western & Southern. Western & Southern was aware of Ms. Armstrong's many years of dedication to its company and that due to her age, her ability to save for her retirement was limited. Western & Southern was also aware that Ms. Armstrong intended to retire soon and, therefore, knew that she was planning her finances accordingly. Additionally, Western & Southern reported Ms. Armstrong to two governmental agencies, NC DOI and SC DOI, with false allegations, which resulted in multiple investigations and could have ultimately led to her losing her insurance license. This led to significant time and energy expended by Ms. Armstrong to defend her licenses, as well as the travel to an in-person conference to defend herself against the false allegations in front of a panel.

The duration of Western & Southern's actions also demonstrate how it engaged in extreme and outrageous conduct. In *Watson*, the Court of Appeals found that behavior that occurred "for some seven or eight months" was extreme and outrageous. In Ms. Armstrong's case, Western & Southern first notified Ms. Armstrong on February 17, 2022 that she was suspended unexpectantly

17

and she was told that Western & Southern was going to be investigating her sales practices. On April 28, 2022, Western and Southern then sent a letter to Ms. Armstrong notifying her that she was being terminated for cause for alleged violations of company policies. Western & Southern then provided false information to the NC DOI and SC DOI, which led to investigations that lasted almost a year. It was not until March of 2023 that the NC DOI and SC DOI cleared Ms. Armstrong of wrongdoing. However, as of the date of this filing, Western & Southern has maintained its position that Ms. Armstrong violated policies and laws, upon information and belief. Therefore, Western & Southern has continued its extreme and outrageous behavior for much longer than the Court of Appeals found to be extreme and outrageous in *Watson*. Therefore, the type of conduct Western & Southern engaged in and the length of time that its conduct continued establishes that its actions were extreme and outrageous.

Second, Western & Southern's actions indicate a reckless indifference to the likelihood that it would cause severe emotional distress. Western & Southern demonstrated reckless indifference in several ways. It terminated Ms. Armstrong at an elderly age, when her employment options were limited, and therefore prevented her from collecting the large payout she was entitled to. Additionally, this payout would help sustain her for the rest of her life, without which her standard of living in her later years would be at risk, causing great distress. Western & Southern also reported false allegations to the NC DOI and SC DOI, which resulted in multiple investigations and an in-person meeting with the NC DOI. Western & Southern's actions could have resulted in Ms. Armstrong losing her insurance license. Ms. Armstrong was faced with the stress of needing to defend herself from two governmental authorities due to Western & Southern's actions. These actions demonstrate that Western & Southern showed a reckless indifference to the emotional distress that would result from its actions.

18

Third, Western & Southern's actions did in fact cause Ms. Armstrong severe emotional distress. At the age of seventy-three years old, Ms. Armstrong was wrongfully terminated and the substantial retirement funds she had earned through her LTIRP were taken away. At an age where financial planning is absolutely crucial for retirement and late-in-life living expenses, this was a great emotional stressor for Ms. Armstrong. It would be emotionally stressful to any person to lose approximately $1 million in a single day, but it is especially stressful for someone late in life who has planned their financial future around that fund. On top of that stress, Ms. Armstrong had to endure the distress and fear that she would lose her license due to the knowingly (or, at the very least, recklessly) false allegations by Western & Southern. She had to endure multiple state investigations, including an in-person hearing, and expend significant funds in costs and legal expenses to defend herself. Ms. Armstrong's personal and professional reputation have been marred by these false allegations, and Ms. Armstrong has been humiliated in front of her community, church, friends, and family.

Ms. Armstrong has also endured physical consequences as a result of these false allegations. Ms. Armstrong has experienced sleep issues, loss of appetite, frequent illness, intrusive thoughts, and has experienced significant weight loss. Additionally, Ms. Armstrong has experienced mental turmoil and depression as a result of these false allegations.

## Cause of Action Five
## Unjust Enrichment

There are five elements to an unjust enrichment claim: (1) one party must confer a benefit upon the other party, (2) the benefit must not have been conferred officiously; that is, it must not be conferred by an interference in the affairs of the other party in a manner that is not justified in the circumstances, (3) the benefit must not be gratuitous, (4) the benefit must be measurable, and (5) the defendant must have consciously accepted the benefit. *Butler v. Butler*, 768 S.E.2d 332,

19

336 (N.C. Ct. App. 2015). "[I]n order to prevail on a claim of unjust enrichment, a plaintiff must show that property or benefits were conferred on a defendant under circumstances which give rise to a legal or equitable obligation on the part of the defendant to account for the benefits received." *Butler*, at 336-37 (internal quotations omitted). "It is a general principle underlying various legal doctrines and remedies, that *one person should not be permitted unjustly to enrich himself [or herself] at the expense of another*." *Watson Elec. Const. Co. v. Summit Comp.*, LLC, 587 S.E.2d 87, 92 (N.C. Ct. App. 2003) *(emphasis in original)*. Both the Supreme Court of North Carolina and Court of Appeals of North Carolina "typically contemplate unjust enrichment as an appropriate remedy only in situations where the complaining party intentionally and deliberately undertook an action with an expectation of compensation or other benefit in return." *Butler*, at 340.

Western & Southern has been unjustly enriched by Ms. Armstrong's employment by failing to provided her with the payout she was entitled to under the LTIRP. Western & Southern has received the benefit and profits of Ms. Armstrong's work over almost two decades of employment. Western & Southern willingly accepted this benefit yet denied Ms. Armstrong one of the terms of the agreement of such employment, namely the payout under the LTIRP. In *Butler v. Butler*, the Court of Appeals found that receiving twenty-four months of unreduced federal retirement benefits because of the other party's failure to file a copy of a domestic relations order with a government office was a measurable benefit that was not meant to be treated as a gift. *Butler*, at 339. Similarly, by preventing Ms. Armstrong from collecting the payout she was entitled to under the LTIRP, Western & Southern received a measurable benefit that Ms. Armstrong did not intend to make, and therefore, could not be considered a gift. Ms. Armstrong intentionally and deliberately continued her employment with Western & Southern with an expectation of the payout in return for her many years as its employee. Ms. Armstrong planned her finances and retirement around that expectation.

20

Lastly, Western & Southern accepted the benefit of Ms. Armstrong's work by continuing to collect the profits from customers she engaged. Therefore, Western & Southern has been unjustly enriched by failing to pay Ms. Armstrong the payout she was entitled to due to her many years of employment at Western & Southern.

WHEREFORE, Plaintiff Barbara Armstrong, respectfully prays the Court as follows:

1. Enter a judgment in favor of Ms. Armstrong in her Wrongful Termination in Violation of Age Discrimination in Employment Act ("ADEA") claim against Western & Southern;

2. Enter a judgment in favor of Ms. Armstrong in her Wrongful Termination in Violation of Public Policy claim against Western & Southern;

3. Enter a judgment in favor of Ms. Armstrong in her defamation claim against Western & Southern;

4. Enter a judgment in favor of Ms. Armstrong in her intentional infliction of emotional distress claim against Western & Southern;

5. Enter a judgment in favor of Ms. Armstrong in her unjust enrichment claim against Western & Southern;

6. For a trial by jury on all issues so triable;

7. For entry of an award to Ms. Armstrong equal to the value of the vested percentage of units as of the date of her termination, pursuant to the LTIRP;

8. For entry of an award to Ms. Armstrong equal to the current value of the LTIRP units Ms. Armstrong would have received if she had been permitted to continue her work through retirement, pursuant to the LTIRP;

21

9. For entry of an award of compensatory damages for Ms. Armstrong's loss of renewal income, loss of revenue due to the loss of appointments with other insurance companies, and emotional distress;

10. For entry of an award of punitive damages against Western & Southern, pursuant to N.C. Gen Stat. § 1D-1, for its intentional, willful, wanton, malicious, and reckless conduct;

11. Recovery of costs and reasonable attorney's fees to the extent allowed by law;

12. The cost of this action be taxed against Western & Southern; and

13. For all such other and further relief that the Court deems just and equitable.

Dated: October 27, 2023.

**HLBS LAW**

Megan Frysinger
Megan Frysinger
NC Bar No. 54499
Chelsea Bauer
NC Bar No. 52020
390 Interlocken Crescent, Suite 350
Broomfield, CO 80021
T: (720) 466-3505
Megan.Frysinger@hlbslaw.com
Chelsea.Bauer@hlbslaw.com

*Attorneys for Plaintiff*

22

NORTH CAROLINA
GASTON COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
23 CVS _____

BARBARA ARMSTRONG )
)
    *Plaintiff,* )
)
v. )
)
W&S BROKERAGE SERVICES, INC. )
)
    *Defendant,* )

**VERIFICATION**

STATE OF _N C_     §
    §
COUNTY OF _Mecklenburg_     §

    BEFORE ME, the undersigned authority, on this day did personally appear, **BARBARA ARMSTRONG**, who upon her oath did depose and state as follows:

    "I have read the above and foregoing COMPLAINT and the facts stated therein are true and correct to the best of my knowledge, except to those matters therein alleged upon information and belief. As to those matters, I believe them to be true."

                              **BARBARA ARMSTRONG**

SUBSCRIBED AND SWORN TO before me on this the _18_ day of _October_, 2023.

                              NOTARY PUBLIC, in and for
                              The State of, _N C_

                              Commission Expires 08/22/2027

Exhibit 1

To whom it may concern:

I Christopher Martin have not talked to anyone from Western Southern over the phone nor have I told anyone that I do not have any life insurance with them.

*Christopher Martin* 2/16/23

**INDIVIDUAL ACKNOWLEDGMENT**

State/Commonwealth of ___North Carolina___

County of ___Gaston___  } ss.

On this the __16__ day of __February__ , __2023__ , before me,
     Day            Month           Year

___Starr Clinton___ , the undersigned Notary Public,
     Name of Notary Public

personally appeared ___Christopher Martin___
                                Name(s) of Signer(s)

> Starr Clinton
> NOTARY PUBLIC
> Gaston County, NC
>
> Starr Clinton
> NOTARY PUBLIC
> ... Co... NC

☐ personally known to me – **OR** –

☑ proved to me on the basis of satisfactory evidence

to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged to me that he/she/they executed the same for the purposes therein stated.

WITNESS my hand and official seal.

___Starr Clinton___
     Signature of Notary Public

___12-16-25___
Any Other Required Information
(Printed Name of Notary, Expiration Date, etc.)

Place Notary Seal/Stamp Above

—————— OPTIONAL ——————

*This section is required for notarizations performed in Arizona but is optional in other states. Completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**

Title or Type of Document: ___Statement___

Document Date: ___2-16-25___     Number of Pages: _____

Signer(s) Other Than Named Above: _____

©2020 National Notary Association

 **Exhibit 2**

| | |
|---|---|
| **Subject:** | Informal Conference - ASD Fiel 86599 |
| **Date:** | Thursday, March 30, 2023 at 9:53:11 AM Eastern Daylight Time |
| **From:** | Walls, Tommy |
| **To:** | barbara.armstrong@ |
| **CC:** | Lem, Rebecca E, Chelsea Bauer, Scott, Nadine B |
| **Attachments:** | image001.png, image002.png, image004.png |

Dear Ms. Armstrong,

Thank you for attending the informal conference on 3-29-23.

As we discussed, the Department will not be taking regulatory action against you in this matter, and our file is closed at this time.

Sincerely,

**Tommy Walls I Senior Complaint Analyst**
**Agent Services Division**

 **N.C. Department of Insurance**
1204 Mail Service Center
Raleigh, NC 27699-1204
919.814.9843 **phone**
919.715.3794 **fax**

Email correspondence to and from this address may be subject to the North Carolina Public Records Law "NCGS.CH.132" and may be disclosed to third parties by an authorized state official.



South Carolina Department of Insurance
1201 Main Street, Suite 1000
Columbia, SC 29201

Mailing Address
P.O. Box 100105
Columbia, SC 29202

Exhibit 3

April 24, 2023

**VIA REGULAR & CERTIFIED MAIL/**
**RETURN RECEIPT REQUESTED**
Barbara Armstrong

Re: SCDOI File Number 22-8084

Dear Ms. Armstrong

This is to inform you that the South Carolina Department of Insurance has closed the above referenced file with no administrative action. Please note that this means no determination of violation has been made and no action is being taken against your license at this time.

However, please note that S. C. Code of Laws. Sec 38-43-130 (A)(C)(4) states as follows: (A) The director or his designee may place on probation. revoke. or suspend a producer's license after ten days' notice or refuse to issue or reissue a license when it appears that a producer has been convicted of a crime involving moral turpitude. has violated this title or any regulation promulgated by the department, or has willfully deceived or dealt unjustly with the citizens of this State." (C)" The words 'deceived or delt unjustly with the citizens of this State' include. but are not limited to. action or inaction by the producer as follows:' (4) improperly withholding, misappropriating. or converting any monies or properties received in the course of doing insurance business.

If you have any questions or concerns. you may contact me at (803) 737-6191 or yfunn@doi.sc.gov.

Respectfully,

*Yolanda Funn,*

Investigator
(803) 737-6191
S.C. Department of Insurance

Interlocken Crescent, Ste 350
...nfield, CO 80021

Western & Southern Financial Group, Inc
Attn: Mr. Donald J Wuebbling
400 Broadway St
Cincinnati, OH 45202



9589 0710 5270 1119 7202 06

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

CERTIFIED MAIL®

Retail


UNITED STATES
POSTAL SERVICE

RDC 99

45202



U.S. POSTAGE PAID
FCM LG ENV
BROOMFIELD, CO 80021
NOV 03, 2023
$10.45
R2305M145675-5...